# EXHIBIT A

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
WIREPATH HOME SYSTEMS, LLC, a North Carolina limited liability
company; and DOES 1-10, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ROY RIOS, an individual,

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**ELECTRONICALLY FILED**
Superior Court of California,
County of Orange

**08/21/2019** at 11:09:49 PM
Clerk of the Superior Court
By Jessica Edwards, Deputy Clerk

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF ORANGE<br>700 Civic Center Drive West, Santa Ana, CA 92701 | CASE NUMBER:<br>*(Número del Caso):*<br>30-2019-01092254-CU-CR-CJC<br><br>Judge Linda Marks |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Scott J. Ferrell (Bar #202091)
PACIFIC TRIAL ATTORNEYS, APC
4100 Newport Place Drive, Suite 800, Newport Beach, CA 92660                                    Phone No.: (949) 706-6464

DATE:                           DAVID H. YAMASAKI,        Clerk, by                                        , Deputy
*(Fecha)* 08/21/2019                                      *(Secretario)*                                    *(Adjunto)*
                                Clerk of the Court

Jessica Edwards

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* Wirepath Home Systems, LLC, a North Carolina limited liability company

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)

          ☒ other *(specify):* CCP 17061 (Limited Liability Company)
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
*LexisNexis® Automated California Judicial Council Forms*

1  PACIFIC TRIAL ATTORNEYS
   A Professional Corporation
2  Scott J. Ferrell, Bar No. 202091
   sferrell@pacifictrialattorneys.com
3  4100 Newport Place Drive, Ste. 800
   Newport Beach, CA 92660
4  Tel: (949) 706-6464
   Fax: (949) 706-6469
5
   Attorneys for Plaintiff
6

7

8                 SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                      FOR THE COUNTY OF LOS ANGELES

10

11  ROY RIOS, an individual,                Case No. 30-2019-01092254-CU-CR-CJC

12          Plaintiff,                       Judge Linda Marks

13          v.                               **COMPLAINT**

14  WIREPATH HOME SYSTEMS, LLC, a North
    Carolina limited liability company; and DOES 1-
15  10, inclusive,

16          Defendants.

17

18

19

20

21

22

23

24

25

26

27

28

ELECTRONICALLY FILED
Superior Court of California,
County of Orange
**08/21/2019** at 11:09:49 PM
Clerk of the Superior Court
By Jessica Edwards,Deputy Clerk

Plaintiff Roy Rios ("Plaintiff") alleges the following upon information and belief based upon investigation of counsel, except as to his own acts, which he alleges upon personal knowledge:

## INTRODUCTION

1.      As recently recognized by the Supreme Court of the United States, "The Internet's prevalence and power have changed the dynamics of the national economy." *South Dakota v. Wayfair, Inc.*, 138 S. Ct. 2080, 2097 (2018) (noting that in 1992, less than 2 percent of Americans had Internet access whereas today that number is about 89 percent). According to 2018 polling data, 89 percent of American adults use the Internet.[1] Indeed, one federal district court has noted that "few areas are more integral to 'the economic and social mainstream of American life,' than the Internet's websites." *Del-Orden v. Bonobos, Inc.*, No. 17 Civ. 2744 (PAE), 2017 WL 6547902, at \*9 (S.D.N.Y. Dec. 20. 2017); *United States v. Peterson*, 248 F.3d 79, 83 (2d Cir. 2001) ("Computers and Internet access have become virtually indispensable in the modern world of communications and information gathering.").

2.      According to recent U.S. Census data, approximately 8 million Americans describe themselves as disabled because they are visually-impaired.[2] Thus, depriving blind persons of equal access to commercial websites on the internet would allow American businesses to treat blind persons as second-class citizens who can be segregated from the rest of American society, which is antithetical to the very purpose that motivated Congress to enact the Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.* ("ADA"), almost three decades ago, as well as the enactment of California's Unruh Civil Rights Act. "'Congress found that 'historically, society has tended to isolate and segregate individuals with disabilities, and, despite some improvements, such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem.' ' " *Del-Orden*, 2017 WL 6547902, at \*9 (quoting *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 674-75, 121 S. Ct.

---

[1] http://www.pewinternet.org/fact-sheet/internet-broadband/ (last visited July 30, 2018). Indeed, 98 percent of adults between the ages of 18-29 use the Internet, and 97 percent of adults between the ages of 30-49 use the Internet. *Id.*

[2] In 2016, an estimated 7.7 million Americans reported having a visual disability. http://www.disabilitystatistics.org/reports/acs.cfm?statistic=1 (last visited July 30, 2018). The statistics were calculated by the Cornell University Yang Tan Institute using the U.S. Census Bureau's 2016 American Community Survey (ACS) Public Use Microdata Sample (PUMS) data. The estimate is based on a sample of 3,085,278 persons who participated in the 2016 ACS.

1   1879 (2001) (quoting 42 U.S.C. § 12101(a)(2))).  "Congress found that 'physical or mental disabilities

2   in no way diminish a person's right to fully participate in *all aspects of society*, yet many people with

3   physical or mental disabilities have been precluded from doing so because of discrimination.'"  *Del-*

4   *Orden*, 2017 WL 6547902, at *9 (quoting 42 U.S.C. § 12101(a)(1)) (emphasis added in *Del-Orden*).

5   "After thoroughly investigating the problem, Congress concluded that there was a 'compelling need'

6   for a 'clear and comprehensive national mandate' to eliminate discrimination against disabled

7   individuals, and to integrate them 'into the economic and social mainstream of American life.'"  *PGA*

8   *Tour*, 532 U.S. at 675 (quoting S. Rep. No. 101-116, p. 20 (1989); H.R. Rep. No. 101-485, pt. 2, p. 50

9   (1990), U.S.C.C.A.N. 1990, pt. 2, pp. 303, 332).  To remedy these ills, "Congress provided [a] broad

10   mandate" in the ADA to effect the statute's "sweeping purpose."  *Id.*  "In a society in which business

11   is increasingly conducted online, excluding businesses that sell services through the Internet from the

12   ADA would[:] 'run afoul of the purposes of the ADA and would severely frustrate Congress's intent

13   that individuals with disabilities fully enjoy the goods, services, privileges, and advantages ***available***

14   ***indiscriminately to other members of the general public***'".  *National Ass'n of the Deaf v. Netflix, Inc.*,

15   869 F. Supp. 2d 196, 200 (D. Mass. 2012) (emphasis added) (quoting *Carparts Distrib. Ctr. v. Auto*

16   *Wholesaler's Ass'n*, 37 F.3d 12, 20 (1st Cir. 1994)).

17       3.       Section 51(f) of the California Civil Code provides that a violation of the right of any

18   individual under the ADA, shall also constitute a violation of the Unruh Civil Rights Act.  A person

19   who visits a business's website with intent to use its services and encounters terms or conditions that

20   exclude the person from full and equal access to its services has standing under the Unruh Act, with no

21   further requirement that the person enter into an agreement or transaction with the business.  *White v.*

22   *Square, Inc.*, __ P.3d __, 2019 WL 3771912, at *7 (Cal. Sup. Ct. Aug. 12, 2019).

23       4.       Plaintiff is a blind individual who requires screen reading software to read website

24   content and access the internet.  Defendant Wirepath Home Systems, LLC ("Defendant") maintains its

25   website, sunbritetv.com (the "Website") in such a way that the Website contains numerous access

26   barriers preventing Plaintiff, and other blind and visually-impaired individuals, from gaining equal

27   access to the Website.  Defendant's denial of full and equal access to its Website, and therefore its

28

1  products and services offered thereby, are a violation of Plaintiff's rights under California's Unruh

2  Civil Rights Act.

### JURISDICTION AND VENUE

4      5.    This Court has subject matter jurisdiction over this action.  This Court has personal

5  jurisdiction over Defendant because Defendant has conducted and continues to conduct substantial

6  business in the State of California, and because Defendant's offending Website is available across

7  California.

8      6.    Venue is proper in this Court because Defendant conducts substantial business in this

9  County, including through its manufacturing facility in Westlake Village, California, and because a

10  substantial portion of the misconduct alleged herein occurred in the County of Los Angeles.

### PARTIES

12      7.    Plaintiff Roy Rios resides in Orange County, California.  Plaintiff is permanently blind

13  and uses screen readers in order to access the internet and read website content.  As detailed above,

14  despite several attempts to use and navigate the Website, Plaintiff has been denied the full use and

15  enjoyment of the facilities and services of the Website as a result of accessibility barriers on the

16  Website.  The access barriers on the Website have caused a denial of Plaintiff's full and equal access

17  multiple times in the past, and deterred Plaintiff on a regular basis from accessing Defendant's

18  Website.

19      8.    While Plaintiff genuinely wants to avail himself of Defendant's goods and services as

20  offered on Defendant's Website, Plaintiff has a dual motivation: he is also a "tester," which one

21  federal court has defined to be "individuals with disabilities who visit places of public accommodation

22  to determine their compliance with Title III [of the ADA]."  *Harty v. Burlington Coat Factory of*

23  *Penn., L.L.C.*, Civil Action No. 11-01923, 2011 WL 2415169, at *1 n.5 (E.D. Pa. June 16, 2011).

24  Indeed, it is widely accepted that "testers" such as Plaintiff advance important public interests and

25  should be "praised rather than vilified."  *Murray v. GMAC Mortgage Corp.*, 434 F.3d 948, 954 (7th

26  Cir. 2006).  Plaintiff has filed multiple lawsuits against various operators of commercial websites

27  under the Unruh Civil Rights Act as part of his advocacy work on behalf of the civil rights of visually-

28  impaired persons.  Plaintiff intends to continue to engage in such advocacy work into the foreseeable

1   future to ensure that Defendant's commercial Website and others are fully and equally enjoyable to

2   and usable by visually-impaired persons, including himself.

3         9.     Plaintiff is informed and believes, and thereon alleges, that Defendant Wirepath Home

4   Systems, LLC is a North Carolina limited liability company with its principal place of business located

5   in Charlotte, North Carolina.  Plaintiff is informed and believes, and thereon alleges, that Defendant

6   owns, operates and provides to the public the Website.  The Website provides access to Defendant's

7   array of products and services, including descriptions of its products, amenities and services, online

8   shops, and many other benefits related to its products and services.  The Website is a public

9   accommodation within the definition of Title III of the Americans with Disabilities Act of 1990, 42

10  U.S.C. § 12181(7) and is a "business establishment" within the meaning of the Unruh Civil Rights

11  Act, California Civil Code § 51 *et seq.*  The Website is a service, privilege, and advantage and

12  accommodation of Defendant's services.

13        10.    At all relevant times, each and every Defendant was acting as an agent and/or employee

14  of each of the other Defendants and was acting within the course and/or scope of said agency and/or

15  employment with the full knowledge and consent of each of the Defendants.  Each of the acts and/or

16  omissions complained of herein were alleged and made known to, and ratified by, each of the other

17  Defendants (Wirepath Home Systems, LLC, and DOE Defendants will hereafter collectively be

18  referred to as "Defendant").

19        11.    The true names and capacities of the Defendants sued herein as DOES 1 through 10,

20  inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names.

21  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged

22  herein.  Plaintiff will seek leave of Court to amend this Complaint to reflect the true names and

23  capacities of the DOE Defendants when such identities become known.

24                                       **FACTS**

25        12.    The Internet has become a significant source of information, a portal and tool for

26  conducting business, and a means for doing everyday activities such as shopping, banking, etc. for

27  both the sighted and blind, and/or visually-impaired persons.

28

13.     Blind individuals may access websites by using keyboards in conjunction with screen-reading software that vocalizes visual information on a computer screen.  Screen access software provides the only method by which a blind person may independently access the internet.  Unless websites are designed to be read by screen reading software, blind persons are unable to fully access websites and the information, products and services, privileges, advantages, and accommodations contained thereon.

14.     The international website standards organization, W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0").  WCAG 2.0 are well-established, industry standard guidelines for ensuring websites are accessible to blind and visually-impaired people.  These guidelines are successfully followed by numerous large business entities to ensure their websites are accessible.  These guidelines recommend several basic components for making websites accessible including, but not limited to, adding invisible alternative text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse; ensuring that image maps are accessible, and adding headings so that blind people can easily navigate websites. Without these very basic components, a website will be inaccessible to a blind or visually-impaired person using a screen reader.

15.     Defendant offers the Website, which provides, as set forth above, a breadth of information concerning its products and other amenities and services, privileges, advantages, and accommodations.

16.     Based on information and belief, it is Defendant's policy and practice to deny blind users, including Plaintiff, equal enjoyment of and access to the Website.  Due to Defendant's failure and refusal to remove access barriers on the Website, Plaintiff and other blind and visually impaired individuals have been denied equal enjoyment of and access to Defendant's products, services, advantages, privileges, and accommodations offered to the public through the Website.

17.     Defendant denies blind individuals equal enjoyment of and access to the products, services, privileges, advantages, and accommodations and information made available through the Website by preventing them from freely navigating the Website.  The Website contains access barriers that prevent free and full use by Plaintiff and other blind persons using screen reading software.

18.     The Website's barriers are pervasive and include, but are not limited to, the following: (1) Missing alternative text which presents a problem because an image without alternative text results in an empty link.  Alternative Text is invisible code embedded beneath a graphical image on a website. Web accessibility requires that Alternative Text be coded with each picture so that a screen reader can speak the Alternative Text where a sighted user sees pictures.  Alternative Text does not change the visual presentation, but instead generates a text box that will pop-up when the mouse moves over the picture.  The lack of Alternative Text on these graphics prevents screen readers from accurately vocalizing a description of the graphics.  As a result, visually-impaired SunBrite TV customers are unable to determine what is on the website, browse the site, and determine whether or not to purchase Defendant's products; (2) Empty or missing form labels which presents a problem because, if a form control does not have a properly associated text label, the function or purpose of that form control may not be presented to screen reader users. Form labels provide visible descriptions and larger clickable targets for form controls; (3) Empty links that contain no text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen reader users and (4) Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen reader users.

19.     Due to the inaccessibility of the Website, blind and otherwise visually impaired customers who use screen readers are hindered from effectively browsing for Defendant's products, amenities and services, privileges, advantages, and accommodations that exist online unlike sighted users.   If the Website were accessible, Plaintiff would independently and privately investigate Defendant's products, services, privileges, advantages, accommodations, and amenities, as sighted individuals can and do.

20.     Despite several attempts to access the Website in recent months, the numerous access barriers contained on the Website have denied Plaintiff's full and equal access, and have deterred Plaintiff on a regular basis from accessing the Website.   Similarly, based on the numerous access barriers contained on the Website, Plaintiff has been deterred from purchasing Defendant's products as Plaintiff would have been able to do by using the Website.  Plaintiff continues to attempt to utilize the

1    Website and plan to continue to attempt to utilize the Website in the near future.  Plaintiff's dignitary

2    interest as a disabled person has been harmed by Defendant's actions.

3    **CAUSE OF ACTION**

4    **Violations of the Unruh Civil Rights Act, California Civil Code § 51 *et seq.***

5    **(By Plaintiff Against All Defendants)**

6    21.    Plaintiff incorporates by this reference the allegations contained in the preceding

7    paragraphs above as if fully set forth herein.

8    22.    California Civil Code § 51 *et seq.* guarantees equal access for people with disabilities to

9    the accommodations, advantages, facilities, privileges, and services of all business establishments of

10   any kind whatsoever.  Defendant is systematically violating the Unruh Civil Rights Act, California

11   Civil Code § 51 *et seq.*

12   23.    The Website is a "business establishment" within the meaning of the California Civil

13   Code § 51 et seq.  Defendant has generated, and does generate, hundreds of thousands of dollars in

14   revenue from the sale of its goods and services in California through the Website.  The Website is a

15   service provided by Defendant that is inaccessible to patrons who are visually-impaired like Plaintiff.

16   This inaccessibility has denied visually-impaired patrons full and equal access to the facilities and

17   services that Defendant makes available to the non-disabled public.  Defendant has violated the Unruh

18   Civil Rights Act by denying visually-impaired customers the services and products provided by the

19   Website.  These violations are ongoing.

20   24.    Defendant's actions constitute intentional discrimination against Plaintiff on the basis

21   of a disability in violation of the Unruh Civil Rights Act because Defendant has constructed a Website

22   that is inaccessible to Plaintiff, knowingly maintains the Website in this inaccessible form, and has

23   failed to take adequate actions to correct these barriers even after being notified of the discrimination

24   that such barriers cause.

25   25.    Defendant is also violating the Unruh Civil Rights Act because the conduct alleged

26   herein likewise constitutes a violation of various provisions of the ADA, 42 U.S.C. § 12101 *et seq.*

27   Section 51(f) of the California Civil Code provides that a violation of the right of any individual under

28   the ADA shall also constitute a violation of the Unruh Civil Rights Act.

26.     The actions of Defendant are in violation of the Unruh Civil Rights Act and, therefore, Plaintiff is entitled to injunctive relief remedying the discrimination.

27.     Plaintiff is also entitled to a preliminary and permanent injunction enjoining Defendant from violating the Unruh Civil Rights Act and requiring Defendant to take the steps necessary to make the Website readily accessible to and usable by visually-impaired individuals.

28.     Plaintiff is also entitled to statutory minimum damages pursuant to California Civil Code § 52 for each and every offense. Plaintiff is also entitled to reasonable attorneys' fees and costs. However, Plaintiff expressly limits the total amount of recovery, including statutory damages, attorneys' fees and costs, and cost of injunctive relief not to exceed $74,999.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment as follows:

1.     For a judgment that Defendant violated Plaintiff's rights under the Unruh Civil Rights Act, California Civil Code § 51 *et seq.*;

2.     For a preliminary and permanent injunction requiring Defendant to take the steps necessary to make the Website, sunbritetv.com, readily accessible to and usable by visually-impaired individuals; but Plaintiff hereby expressly limits the injunctive relief to require that Defendant expend no more $20,000 as the cost of injunctive relief;

3.     An award of statutory minimum damages of $4,000 per violation pursuant to section 52(a) of the California Civil Code; however, Plaintiff expressly limits the total amount of recovery, including statutory damages, attorneys' fees and costs, and cost of injunctive relief not to exceed $74,999;

4.     For attorneys' fees and expenses pursuant to all applicable laws including, without limitation, California Civil Code § 52(a); however, Plaintiff expressly limits the total amount of recovery, including statutory damages, attorneys' fees and costs, and cost of injunctive relief not to exceed $74,999;

5.     For pre-judgment interest to the extent permitted by law;

6.     For costs of suit; and

/ / /

7.      For such other and further relief as the Court deems just and proper.

Dated:  August 21, 2019                                    PACIFIC TRIAL ATTORNEYS, APC

By: _____
Scott. J. Ferrell
Attorneys for Plaintiff

1

## **DEMAND FOR JURY TRIAL**

2

    Plaintiff hereby demands a trial by jury of all claims and causes of action so triable in this

3

lawsuit.

4

5

Dated: August 21, 2019                                PACIFIC TRIAL ATTORNEYS, APC

6

7

By:_____

8

Scott. J. Ferrell
Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28